FILED

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0114, *State of West Virginia v. Quenton A. Sheffield*

**ARMSTEAD, Justice, dissenting:**

I dissent from the majority opinion because I believe that Mr. Sheffield was not prejudiced by the substitution of an alternate juror after the start of deliberations. Therefore, he received a fair trial in which a twelve-person jury heard the evidence and rendered its verdict. Accordingly, I believe his convictions should be affirmed.

The majority holds that a presumption of prejudice arises when Rule 24(c) of the West Virginia Rule of Criminal Procedure is violated and for the State to overcome that prejudice, it establishes factors for trial courts to weigh. To reach those conclusions, the majority opinion relies heavily on a Pennsylvania case, *Commonwealth v. Saunders*, 686 A.2d 25 (Pa. Super. Ct. 1996). In that case, the Pennsylvania Superior Court noted the divergent approaches taken by federal and state courts on which party carries the burden to demonstrate prejudice in cases of post-deliberation juror substitution. *See Id.* at 28. The majority opinion opted to establish a presumption of prejudice and place the burden upon the State to rebut such presumption. However, as noted in *Saunders*, most federal courts place the burden upon the defendant to demonstrate prejudice. *Id.* citing *United States v. McFarland,* 34 F.3d 1508 (9th Cir.1994), *cert. denied,* 515 U.S. 1107, 115 S.Ct. 2257, 132 L.Ed.2d 264 (1995); *United States v. Quiroz–Cortez,* 960 F.2d 418 (5th Cir.1992); *United States v. Helms,* 897 F.2d 1293 (5th Cir.1990), *cert. denied,* 498 U.S. 900, 111 S.Ct. 257,

1

112 L.Ed.2d 215 (1990); *United States v. Ashby,* 864 F.2d 690 (10th Cir.1988); *United States v. Guevara,* 823 F.2d 446 (11th Cir.1987); *United States v. Foster,* 711 F.2d 871 (9th Cir.1983); [*United States v. Hillard,* 701 F.2d 1052, 1056 (2d Cir.1983), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983)]; *United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Indeed, the issues raised by a post-deliberation substitution of an alternate juror were frequently addressed in the federal courts, resulting in the 1999 Amendments to Rule 24(c) of the Federal Rules of Criminal Procedure which created a mechanism for addressing juror substitution after deliberations have begun.[1] As noted in the majority opinion, our West Virginia Rule of Criminal Procedure 24(c) provides:

> **(c) Alternate Jurors.** The court may direct that more jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are

---

[1] Federal Rule of Criminal Procedure 24(c)(3) now provides a mechanism for the federal courts to retain alternate jurors. "The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin deliberations anew."

In light of the majority opinion, I believe West Virginia's Rule of Criminal Procedure 24(c) should also be amended to reflect the practice contained in the revised federal rule.

2

called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled, two peremptory challenges if three or four alternate jurors are to be impaneled, and three peremptory challenges if five or six alternate jurors are to be impaneled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by these rules may not be used against an alternate juror.

Prior to the 1999 Amendments to the Federal Rule, West Virginia's Rule mirrored the Federal Rule. This Court has stated that "when codified procedural rules . . . of West Virginia are patterned after corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." *State v. Kaufman*, 227 W. Va. 537, 553 n.33, 711 S.E.2d 607, 623 n.33 (2011) (citations omitted). Thus, an examination of pre-1999 federal cases provides a persuasive guide for us in determining whether the circuit court protected Petitioner's right to a trial by jury while at the same time balancing the unique circumstances the circuit court faced in this case. The Seventh Circuit Court of Appeals dealt with very similar facts to those at bar:

The defendant was tried before a jury of twelve regular and two alternate members. At the conclusion of the jury instructions, the two alternate jurors were discharged, and the other jurors retired for deliberations. After two and one-half hours of deliberations, one of the jurors suffered a heart attack and was taken to the hospital. After stopping deliberations, the trial court recalled the two alternate jurors and counsel for the State and the defendant Henderson. The court questioned the alternate jurors about their activities since discharge. The first alternate juror admitted discussing the facts of the case with his wife, but added that she expressed no opinion. Both alternate jurors assured the court of having reached no conclusion about the defendant's guilt.

*Henderson v. Lane*, 613 F.2d 175, 176 (7th Cir. 1980) (footnote omitted). After conferring with counsel, the trial court substituted the first alternate juror and Mr. Henderson was convicted. *Id.* On these facts, the Seventh Circuit court held that "[t]he juror was reinstated in the presence of the petitioner's attorney only after reaffirming his ability to make a fair decision in the case. Because the essential feature of the jury was preserved, the defendant's Sixth Amendment challenge to the substitution procedure must fail." *Id.*, at 179.

Similarly, the Eleventh Circuit Court of Appeals held:

Our decision that substitution of the alternate juror after deliberations had begun does not constitute reversible error should not be misconstrued as a stamp of approval upon such a practice. As was true in *Phillips,* the trial court's decision to substitute the alternate was made in the context of a trial of truly epic proportions in terms of length, scope and expense to both sides. . . .

4

> It is not our intention, nor is it within our province, to authorize routine deviation from the terms of Rule 24(c). That rule is 'the rule' and the substituted juror procedure upheld herein is a narrowly limited exception to the rule, applicable only in extraordinary situations and, even then, only when extraordinary precautions are taken, as was done below, to ensure that the defendants are not prejudiced.

*United States v. Kopituk,* 690 F.2d 1289, 1311 (11th Cir. 1982).

In reviewing the record in the case before us, I do not believe that Mr. Sheffield was prejudiced by the substitution of the alternate juror. The circuit court empaneled twelve jurors and two alternate jurors. Immediately prior to deliberations, the circuit court excused the alternate jurors. After deliberations began, the circuit court learned that one of the seated jurors was seen speaking with a witness during the course of the trial. Upon learning of this, the circuit court halted deliberations, held *voir dire* of the entire panel, and ultimately excused the juror who had spoken with a witness. Mr. Sheffield moved for a mistrial. The circuit court then directed that the Clerk contact the first alternate juror and have her report the next day. The alternate juror appeared and joined the remaining 11 jurors in deliberations, after Mr. Sheffield's trial counsel and the circuit court conducted *voir dire* of the alternate juror. That following colloquy, including questions posed by Mr. Sheffield's counsel, Ms. Givens, is the key to demonstrating that Mr. Sheffield was not prejudiced:

5

THE COURT:  Welcome back.

JUROR:   Thank you.

THE COURT:  Have a seat.

Something came up yesterday over – which we learned that one of the jurors, we didn't know which one, maybe had a conversation with a witness last Thursday afternoon at lunchtime.

We have now determined who that juror was.  We excused that juror which is why we had to bring you back in as the alternate, okay?

Are you okay with serving as a juror on this case, right?  Because we talked to your employer and they totally understood and they were fine with this.

JUROR:   Yes, sir.

MS. GIVENS:  Your honor, I am sorry to interrupt, but I would have just a couple of short questions for her.

THE COURT: Okay.

DIRECT EXAMINATION

BY MS. GIVENS:

Q. When you were excused from the jury yesterday, did you speak to anyone about the case after you left?

A. No, I did not.

Q. You didn't go home and discuss it with your family or anyone?

A. No.

MS. GIVENS: Thank you.

....

THE COURT: Anything else?

BY MS. GIVENS:

Q. Would there be any further hardship on you to deliberate this case however long it takes?

A. No.[2]

(footnote added).

Importantly, all parties and the Court had an opportunity to question the alternate juror before she was seated with the panel. Thereafter, the alternate juror was seated with the remaining eleven jurors, and the circuit court instructed the jury to begin deliberations anew:

> Therefore, you must set aside and disregard all past deliberations and begin your deliberations all over again. Each of you must disregard the earlier deliberations and decide this case as if those earlier deliberations have not taken place.
>
> We will exit and you can start your deliberations from the beginning.

---

[2] As demonstrated by this colloquy, Petitioner's counsel had the opportunity to question the alternate juror prior to the juror joining the remaining jurors and beginning deliberations in this matter. To the extent Petitioner objects to the fact that additional inquiry should have been undertaken, Petitioner had the opportunity to ask additional questions or request additional inquiry by the court and failed to do so. Accordingly, I believe Petitioner waived such objection.

The jury subsequently deliberated and rendered its verdict, finding Mr. Sheffield guilty on all counts.

The majority opinion gives inadequate weight to the process followed by the circuit court in its effort to protect Mr. Sheffield's right to a trial by jury. The circuit court took significant steps to ensure that Mr. Sheffield was not prejudiced. The alternate juror was questioned and answered all questions satisfactorily. The jury was instructed to start its deliberations from the beginning. The circuit court took appropriate steps in light of the unique circumstances it faced – steps which provided adequate safeguards and did not violate Mr. Sheffield's right to a fair jury trial by twelve persons.

Under these facts, and based upon the federal precedents discussed above, I believe the majority incorrectly determined that there is a presumption of prejudice that the State must overcome. Certainly, if Mr. Sheffield could demonstrate prejudice due to the seating of the alternate juror, he would be entitled to a new trial. However, there should be no presumption that such prejudice exists and I disagree with the majority's adoption of a rule presuming such prejudice. Instead, adoption of a rule requiring the Petitioner to show prejudice not only provides Petitioner with the opportunity to point to evidence of such prejudice but is also in harmony with our long-standing rule that we give great weight

to decisions from federal courts regarding the same or similar provisions of the Rules. *See Kaufman*, 227 W. Va. at 553 n.33, 711 S.E.2d at 623 n.33.[3]  In addition, even under the presumption of prejudice standard adopted by the majority, the evidence in this case, nonetheless, shows that the Petitioner was not prejudiced by the seating of the alternate juror.  The circuit court took reasonable steps to ensure there was no such prejudice, including the questions asked of the alternate juror and the instructions given to the jury as a whole that it must begin its deliberations anew once the alternate juror joined the jury.  Regardless of whether the State bears the burden to show the absence of prejudice, or the

---

[3] In addition, affirming the circuit court's seating of the alternate juror, with the accompanying precautions undertaken by the circuit court to protect the Petitioner's rights a fair trial, avoids the additional time and expense of a retrial.  Indeed, the majority's reversal of Petitioner's conviction and the likelihood of a retrial, when Mr. Sheffield was not prejudiced, does not further the interests of justice in this case.  As this Court has found:

> Wholesale invalidation of convictions rendered years ago could well mean that convicted persons would be freed without retrial, for witnesses . . . no longer may be readily available, memories may have faded, records may be incomplete or missing, and physical evidence may have disappeared. Society must not be made to tolerate a result of that kind when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved.

*Bowman v. Leverette*, 169 W. Va. 589, 612 n.17, 289 S.E.2d 435, 448 n.17 (1982) quoting *Gosa v. Mayden*, 413 U.S. 665, 685 (1973).

9

Petitioner bears the burden to prove prejudice, there simply was no prejudice demonstrated here.  Accordingly, I respectfully dissent and would affirm the Petitioner's conviction.