FILED
United States Court of Appeals
Tenth Circuit

December 30, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TITO ABBO,

      Plaintiff - Appellant,

v.

STATE OF WYOMING; WYOMING
HIGHWAY PATROL; AARON KIRLIN,
individually and in his official capacity;
BEATRIZ REGINA SCHULMEISTER,
individually and in her official capacity;
JOHN DOES 1 THROUGH 20,

      Defendants - Appellees.

No. 13-8079
(D.C. No. 2:12-CV-00249-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.

Tito Abbo was a passenger in his car when a Wyoming Highway Patrol (WHP)

trooper stopped the driver for speeding. The trooper believed she smelled raw marijuana

in the vehicle, along with another plant odor she believed to be sage. She called for

another WHP trooper, who also smelled what he believed was raw marijuana. The

troopers patted down Mr. Abbo, handcuffed him, placed him in a patrol car, and searched

---

      [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his vehicle. They did not find marijuana, and released Mr. Abbo. The stop lasted approximately 76 minutes.

Mr. Abbo brought suit under 42 U.S.C. § 1983, alleging the troopers' conduct violated his Fourth, Fifth, and Fourteenth Amendment rights. The district court determined the troopers had qualified immunity and granted summary judgment for the defendants. Mr. Abbo now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual Background*

On October 30, 2011, Tito Abbo was riding as a passenger in his own car when Trooper Regina Schulmeister of the WHP stopped the driver, Gregory Mercado, for speeding.[1] After failing to stop for two miles and waving at Trooper Schulmeister, the occupants of the car pulled onto the highway shoulder and rolled down both windows. When Trooper Schulmeister approached the vehicle, she believed she smelled raw marijuana in the car as well as another plant odor she believed to be sage.

Trooper Schulmeister took Mr. Mercado back to her patrol car, searched him, and put him in the back seat. She issued him a citation for speeding. Trooper Schulmeister then called Trooper Aaron Kirlin to the scene. When he arrived, she told him, "I need

---

[1] The car was going 105 miles per hour in a 75 miles-per-hour zone.

your nose," but did not tell him what she believed she smelled.[2]

Trooper Kirlin approached Mr. Abbo's vehicle, spoke with him briefly, and believed he smelled raw marijuana. He asked Mr. Abbo to step out of the car. When he informed Mr. Abbo that he smelled marijuana and was going to search the vehicle, Mr. Abbo protested, became "somewhat agitated," and told Trooper Kirlin to call for a drug dog. Aplt. App. at 143. Trooper Kirlin informed Mr. Abbo he was not under arrest, but handcuffed Mr. Abbo's hands behind his back, patted him down, and placed him in the back seat of a patrol car while the troopers searched his vehicle.

Troopers Schulmeister and Kirlin searched Mr. Abbo's vehicle for 49 minutes. They found rolling papers without tobacco, cellophane with duct tape, a power inverter, a screwdriver, three cellular phones, an iPad, and salves and herbs, but did not find marijuana. The troopers released Mr. Abbo and Mr. Mercado. Mr. Abbo suffers anxiety attacks as a result of the stop.

B. *Procedural Background*

Mr. Abbo sued in federal district court in Wyoming, bringing (1) § 1983 claims against the troopers in their personal capacity, alleging deprivation of civil rights, false arrest, and false imprisonment; (2) a civil conspiracy claim against the troopers; and (3) a claim against the WHP and the troopers in their official capacity. He sought monetary

---

[2] Trooper Schulmeister described the smell as "sage." Aplt. App. at 184-85. Trooper Kirlin noted "pine crap scattered everywhere" in the vehicle. Kirlin Video at 16:51:13. Mr. Abbo is a trained herbalist and says the vehicle contained fresh juniper.

and punitive damages.

The WHP and troopers filed a motion for summary judgment, which the district court granted. The district court determined (1) the troopers were entitled to qualified immunity, (2) Mr. Abbo had not alleged sufficient facts to establish his conspiracy claim, and (3) sovereign immunity barred claims against the troopers and WHP in their official capacity.

Mr. Abbo filed a timely appeal. On appeal, Mr. Abbo contests the grant of summary judgment on the § 1983 claims against the troopers in their personal capacity, arguing they are not entitled to qualified immunity for the alleged violation of his Fourth Amendment rights.

## II.    DISCUSSION

### A. *Standard of Review and Legal Background*

We review a grant of summary judgment based on qualified immunity de novo. *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). "Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). When a defendant asserts qualified immunity, the burden of proof shifts to the plaintiff. *Steffey*, 461 F.3d at 1221. The plaintiff must show (1) the defendant violated his or her constitutional right and (2) the infringed right was so clearly established that every reasonable official would have understood what she or he was doing violated the law. *Kerns*, 663 F.3d at 1180. We may address these two

-4-

showings in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## B. *Analysis*

Although the governing case law likely supports a finding of probable cause, we begin and end our inquiry by asking whether the alleged infringed right was so clearly established that every reasonable official would have understood the troopers' actions violated the law.[3] We conclude it was not.

The troopers testified they smelled what they believed to be raw marijuana in Mr. Abbo's vehicle, and determined this gave them probable cause to search.[4] Indeed, this court has repeatedly recognized the odor of raw marijuana establishes probable cause for

---

[3] The district court relied on this ground: "The issue is not whether probable cause existed, but whether it was clearly established that probable cause did not exist." Aplt. App. at 145 (emphasis omitted).

[4] Mr. Abbo contends the district court erred in determining the troopers actually smelled raw marijuana. He argues this was a disputed fact, and claims the district court improperly resolved it in favor of the troopers rather than Mr. Abbo, the non-moving party. In his Fed. R. App. P. 28(j) letter of November 17, 2014, Mr. Abbo quotes from *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citation, quotations, and alterations omitted): "[b]y failing to credit evidence that contradicted some of its key factual conclusions, the court improperly weighed the evidence and resolved disputed issues in favor of the moving party."
We disagree. We understand the district court's opinion to find that the troopers smelled marijuana in a subjective sense, and not to establish that the troopers smelled what was, in fact, marijuana. The parties do not dispute this fact. Both troopers commented they smelled marijuana during their search. They subsequently testified under oath that they smelled raw marijuana in Mr. Abbo's car. At oral argument, counsel for Mr. Abbo conceded the troopers believed they smelled raw marijuana. Oral Arg. at 2:40-4:53. The troopers' belief is not in question, and a mistake of fact does not defeat their determination of probable cause. *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013); *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009).

a search. *See United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003); *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001); *United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991); *United States v. Sperow*, 551 F.2d 808, 811 (10th Cir. 1977); *United States v. Bowman*, 487 F.2d 1229, 1231 (10th Cir. 1973). Once probable cause is established, troopers may search an entire vehicle. *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005); *United States v. Rosborough*, 366 F.3d 1145, 1152-53 (10th Cir. 2004); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995).

We have noted "for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (quotations omitted). Mr. Abbo cites two of our previous rulings to support his claim the troopers lacked probable cause for the search and seizure. First, he invokes *United States v. Nielsen*, 9 F.3d 1487 (10th Cir. 1993), which concluded probable cause did not exist when officers smelled burnt marijuana in a vehicle, searched the passenger compartment but found nothing, and then proceeded to search the trunk of the vehicle, where they found cocaine but did not find marijuana. *Id.* Mr. Abbo argues *Nielsen* stands for the principle "that marijuana smell alone is not grounds to uphold a search, absent the 'corroboration' of a finding of marijuana." Aplt. Br. at 20. Second, Mr. Abbo contends searches based on the odor of raw marijuana are unreasonable when confounding smells are present, citing *United*

-6-

*States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998). He argues a confounding smell in his case called for further investigation to confirm or dispel the troopers' reasonable suspicion, and suggests the troopers should have called a drug dog for that purpose.

Mr. Abbo has misconstrued both opinions. Neither decision is on point for the circumstances at hand, and neither would put a reasonable officer on notice that she or he was violating Mr. Abbo's rights. First, *Nielsen* did not hold that probable cause depends on whether contraband is actually found in a search. "[W]e do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Florida v. Harris*, 133 S. Ct. 1050, 1059 (2013). Instead, *Nielsen* reasoned that the scope of a warrantless search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," and concluded the odor of burnt marijuana gave probable cause to search a more limited area of a vehicle than the odor of raw marijuana. *Nielsen*, 9 F.3d at 1491 (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). Subsequent rulings have reiterated this holding. *See United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) ("*Nielsen* and *Parker* recognize that the smell of burnt marijuana is generally consistent with personal use of marijuana in the passenger compartment of an automobile. . . . When, on the other hand, an officer encounters, as was the case here, the overpowering smell of raw marijuana, there is a fair probability that the car is being used to transport large quantities of marijuana and that the marijuana has been secreted in places other than the passenger compartment."); *see also Rosborough*, 366 F.3d at 1153 (describing *Nielsen* as "limited to the factual scenario of

-7-

an officer detecting the smell of burnt marijuana"); *United States v. Wald*, 216 F.3d 1222, 1226 (10th Cir. 2000) ("[The distinction in *Nielsen*] is premised on the common-sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana."). *Nielsen*, along with subsequent case law, supports the proposition that the odor of raw marijuana provides probable cause to search the entirety of a vehicle.

Second, we have not held or implied confounding smells defeat a probable cause determination. *Salzano* is off point because the officers in that stop alleged they smelled only a masking agent and did not also smell what they believed to be drugs. *Salzano*, 158 F.3d at 1114. Here, however, the troopers believed they smelled raw marijuana as well as a potential masking agent. Furthermore, we have held confounding smells are often used as masking agents to conceal the odor of drugs and therefore bolster, rather than defeat, a finding of probable cause to search. *United States v. West*, 219 F.3d 1171, 1178-79 (10th Cir. 2000). The smell of other plant odors, which Mr. Abbo concedes were in the vehicle, would in fact strengthen a reasonable officer's determination she or he had probable cause to search.[5]

---

[5] Mr. Abbo also argues the troopers violated his rights by handcuffing and detaining him for the duration of his search. The officers' belief they smelled raw marijuana and had probable cause to search the vehicle would also provide them with probable cause to detain Mr. Abbo. *See United States v. Rodriguez-Rodriguez*, 550 F.3d

For purposes of qualified immunity, we need not definitively resolve whether the officers had probable cause to search Mr. Abbo's car based on these precedents.[6] We need only conclude Mr. Abbo has not demonstrated the law was so clearly established that reasonable officers would have known they were violating Mr. Abbo's rights by searching his car and seizing his person after smelling what they believed to be raw marijuana. Without such a showing, the district court was correct to grant the troopers qualified immunity.

III.    **CONCLUSION**

For the foregoing reasons, we affirm the district court.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

---

1223, 1227 (10th Cir. 2008) ("We need not determine whether [the defendant's] investigative detention amounted to an arrest if probable cause existed, because in such circumstances, an arrest would not violate the Fourth Amendment."). On appeal, Mr. Abbo does not offer clearly established law to the contrary.

[6] Mr. Abbo contends the troopers did, in fact, understand that the odor of raw marijuana does not constitute probable cause, citing materials and deposition testimony regarding the troopers' drug interdiction training. Even if we accepted this assertion as true, the relevant inquiry is not whether officers were instructed in a particular way, but whether there was clearly established law to that effect. *See Cortez*, 478 F.3d at 1114-15.